# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHERINE HELDMAN, | ) |
|     *Plaintiff*, | ) |
| | ) |
| vs. | )   Case No. CIV-19-419-D |
| | ) |
| STATE OF OKLAHOMA | ) |
| and DR. TIFFANY KESSLER, | ) |
| individually, | ) |
|     *Defendants*. | ) |

**O R D E R**

Before the Court are two motions to dismiss Plaintiff's Second Amended Complaint [Doc. No. 21]. The Motions were filed by Defendant State of Oklahoma ("Defendant State") [Doc. No. 23] and Defendant Dr. Tiffany Kessler ("Kessler") [Doc. No. 22]. Plaintiff has filed a Response in opposition to both [Doc. Nos. 24, 25, respectively], to which Defendants have replied [Doc. Nos. 26, 27, respectively]. The Motions are fully briefed and at issue.

**JURISDICTION**

The Court has federal question jurisdiction over the present action, as Plaintiff asserts only federal claims against Defendants. 28 U.S.C. § 1331. The parties have all submitted to the jurisdiction of the Court. To the extent that jurisdiction is challenged in this case,[1] the challenge is limited to Defendant Kessler's claim of immunity. Kessler Motion at 9. As it would be improper for the Court to subject the Second Amended

---

[1] Defendant Kessler's Motion to Dismiss [Doc. No. 23] argues that this action should be dismissed pursuant to FED. R. CIV. P. 12(b)(1).

Complaint to dismissal pursuant to FED. R. CIV. P. 12(b)(6) before addressing any arguments that the Court lacks the power to do so, Kessler's jurisdictional attack must be decided first. *See Gill v. U.S.*, 471 F.3d 204 (1st Cir. 2006); *Ogle v. Church of God*, 153 Fed. App'x 371 (6th Cir. 2005); *Ramming v. U.S.,* 281 F.3d 158 (5th Cir. 2001).

**BACKGROUND**

At the time of the alleged events, Plaintiff was a student at Southwestern Oklahoma State University's College of Pharmacy ("SWOSU"). Second Amended Complaint ("SAC") [Doc. No. 21] at 1 ¶ 1. On May 7, 2018, Plaintiff was placed on academic suspension following events that transpired during the fall semester of 2017 and continued into the spring semester of 2018. *Id*. at 2 ¶ 4.

Plaintiff was diagnosed with ADHD and Panic Disorder with symptoms of PTSD. *Id*. at 2 ¶ 6. The timing of the diagnosis is unclear. During the fall semester of 2017, Plaintiff's grandfather entered hospice care. *Id.* at 3 ¶ 13. The news of her grandfather's impending death exacerbated Plaintiff's preexisting condition. *Id.; see id.* at 11 ¶ 39. Plaintiff's medical conditions had previously been manageable, and she had been a good student. *Id.* at 3 ¶ 11. The added stressors proved too much, however, and Plaintiff's grades suffered. *Id*. at 3–4 ¶ 15.

At all relevant times, Kessler was employed by SWOSU and was allegedly the decision maker as to the conduct at issue. *Id*. at 2 ¶ 3. Plaintiff avers to have met with faculty, including Kessler, throughout the semester to express her concerns and difficulties. *Id*. at 4 ¶ 16. Plaintiff allegedly told Kessler she was taking the medications Adderall and Xanax. *Id*. Plaintiff further alleges her concerns were seemingly reduced to slipping

2

grades based on family issues without further consideration of Plaintiff's medical conditions. *Id*.

Plaintiff failed three classes during the 2017 fall semester. *Id.* at 4–5 ¶ 19. Plaintiff requested accommodations in the form of a withdrawal, and SWOSU denied the request. *Id.* When that request was denied, faculty were aware she was struggling. *Id*. at 5 ¶ 20. During the 2018 spring semester, Plaintiff experienced a debilitating panic attack during a final examination. Plaintiff fled the exam room before she could complete the test. *Id.* at 5 ¶ 21. But for that attack, she would have completed the test. *Id*. Due to Plaintiff's failing grades, she was placed on academic probation pursuant to the College of Pharmacy Student Handbook: "A student who has a total of four course failure in at least two different courses shall be suspended." *Id.* ¶ 22. The suspension was officially communicated through a letter from Dr. David Ralph. *Id.* at ¶ 23.

Plaintiff submitted documentation notifying the administration of her intent to appeal, and was contacted by Cindy Dougherty, Dean of Students ("Dougherty"). *Id.* at 6 ¶ 24. Allegedly, Dougherty notified Plaintiff that her disability had been formally documented and that she would receive prospective accommodations. *Id.* at 6 ¶ 25. Kessler responded to the appeal by noting that although prior accommodations had been made for Plaintiff on other exams, Plaintiff did not contact Kessler to tell her she was ill before the exam she failed. *Id.* at 6–7 ¶ 26. Further, Plaintiff did not notify the room proctor of the panic attack. *Id.* Plaintiff, however, alleges she "spoke with numerous faculty…[who] should have been able to recognize Plaintiff's need when Plaintiff disclosed [] she was taking Adderall and Xanax." *Id*. at 10 ¶ 34.

3

On May 21, 2018, Dougherty entered medical withdrawals for Plaintiff's failed courses. *Id.* at 7 ¶ 28. Despite entry of the hardship withdrawals, Plaintiff was placed on academic probation as SWOSU's "policy [was] strictly applied." *Id.* at 16 ¶ 50. SWOSU granted Plaintiff readmission on May 8, 2019. Plaintiff is still experiencing panic attacks and adverse physical reactions. *Id*. at 9 ¶ 32.

Plaintiff's Second Amended Complaint alleges Defendant State violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* Plaintiff asserts Defendant Kessler acted in violation of her substantive due process rights, and that Kessler's conduct is actionable under 42 U.S.C. § 1983.

## STANDARD OF DECISION

*Rule 12(b)(1) Lack of Subject Matter Jurisdiction*

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id*. In reviewing a facial challenge, a district court must accept the allegations in the complaint as true. *Id*. But in a factual attack, the moving party may go beyond the allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id*. A district court may not presume the truthfulness of the complaint's factual allegations when reviewing a factual attack on subject matter jurisdiction. *Id*. Rather, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*

*Rule 12(b)(6) Failure to State a Claim*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim has facial plausibility when the court can draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In § 1983 cases, it is particularly important "that the complaint make clear exactly *who* is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *See Robbins*, 519 F.3d at 1249–50 (emphasis in original); *see also Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009).

## DISCUSSION

Defendant Kessler's Motion to Dismiss [Doc. No. 23] argues that this action should be dismissed pursuant to FED. R. CIV. P. 12(b)(1).

**I.  The Court is without jurisdiction over any claims against Defendant Kessler in her official capacity.**

"An action against a person in [her] official capacity is, in reality, an action against the government entity for whom that person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). "Oklahoma has not consented to be sued in federal court." *Berry v. Oklahoma*, 495 F. App'x 920, 921 (10th Cir. 2012); *accord Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). Nor has Congress abrogated states' sovereign immunity through enactment of 42 U.S.C. § 1983. *Berry*, 495 F. App'x at 921–

22. Thus, the State of Oklahoma's Eleventh Amendment immunity from suits seeking money damages in federal court remains intact. *Christian v. Thompson*, No. CIV-18-699-G, 2019 WL 4920885, at *2 (W.D. Okla. Oct. 3, 2019).

Defendant Kessler, in her official capacity as an employee of SWOSU, is therefore protected by Eleventh Amendment immunity to the extent Plaintiff seeks damages under 42 U.S.C. § 1983. *See id.* As noted above, Plaintiff seeks only money damages under this cause of action; there is no demand for "prospective relief." *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). Accordingly, Plaintiff's § 1983 claims against Defendant Kessler in her official capacity are barred by the Eleventh Amendment, divesting the Court of subject matter jurisdiction.

To the extent Plaintiff asserts any claims under § 1983 against Defendant Kessler in her official capacity, these claims are dismissed pursuant to FED. R. CIV. P. 12(b)(1) for lack of jurisdiction.

## II. Plaintiff's Second Amended Complaint fails to state a substantive due process claim against Defendant Kessler in her individual capacity.

Plaintiff bases her § 1983 claim against Defendant Kessler, individually, on an alleged substantive due process violation.

Where executive action is challenged, as it is here, a substantive due process violation occurs where "government action deprives a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience." *City of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *accord Doe v. Woodward*, 912 F.3d 1278, 1300 (10th Cir. 2019). To state a claim for an executive violation of substantive due process rights, a plaintiff

must allege both a (1) deprivation of property and (2) executive action that shocks the conscience. *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019); *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006). Executive action that shocks the conscience requires far more than negligence. *Moore*, 438 F.3d at 1040. "Even the actions of a reckless official or one bent on injuring a person do not necessarily shock the conscience." *Id.*

Plaintiff's Second Amended Complaint, as with her first, nowhere alleges a § 1983 claim based on supervisory liability. Plaintiff alleges Kessler violated her due process rights by "failing to advise her she was in danger of suspension," acting arbitrarily and with deliberate indifference toward Plaintiff, thwarting Plaintiff's right to appeal, and lying about the retroactive application of school policies. SAC at 25 ¶ 74.

The supporting allegations asserted against Defendant Kessler in the Second Amended Complaint are as follows: Plaintiff met with Kessler and advised Kessler she was taking Adderall and Xanax. SAC at 4 ¶ 16. Kessler "always seemingly reduced [Plaintiff's struggles] to slipping grades based on family issues without further consideration." *Id*. Plaintiff requested that Kessler move an exam date so she could go visit her grandfather. *Id*. at 4 ¶ 17. Kessler denied this request by responding "she could go visit her grandfather over Thanksgiving break." *Id.* 4 ¶ 18. Kessler responded to Plaintiff's appeal request by saying she was not notified of any medical illness prior to the exam and stating that Plaintiff could not leave an exam unless an emergency presented itself. *Id*. at 6 ¶ 26.

As before, none of the factual allegations suggest Kessler acted in such a way that could warrant subjecting her to individual liability. Kessler allegedly refused to apply policies retroactively, denied Plaintiff's requests under discretionary policies, and

7

misunderstood a situation despite being allegedly aware that Plaintiff was on medication. *Id.* at ¶¶ 17–19, 50–52. Mere allegations of negligence will not suffice. *Moore,* 438 F.3d at 1040. "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Onyx Props., LLC v. Bd. of Cty. Commr's*, 838 F.3d 1039, 1048–49 (10th Cir. 2016); *see Martinez v. Chama Valley Indep. Sch. Dis*t. No. 19, 77 F.3d 1253 (10th Cir. 1996) (teacher repeatedly calling a twelve-year-old girl a prostitute not enough). None of Plaintiff's allegations describe conduct that rises to this exacting standard. *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015).

Certainly, Plaintiff claims Kessler acted arbitrarily, capriciously, and not based on deliberate reasoning. SAC at 25 ¶ 74. Without supporting facts, this allegation is conclusory. It is well established that the Court need not accept conclusory allegations as true. *Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."). Plaintiff relies on cases in the context of academic expulsion, noting that "academic decisions are subject to narrow review." Response to Kessler [Doc. No. 25] at 8. Plaintiff further argues that a substantive due process violation took place here because Kessler acted arbitrarily, as evidenced by her "not following policy; denying an accommodation for a false reason; interfering with Plaintiff's appeal rights and imposing unreasonable limitations." *Id*. at 9.

The Court reiterates that the cases Plaintiff relies on involve expulsion and are distinguishable on their facts. *See Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181–82 (10th Cir. 2001). Plaintiff here was never expelled. The

Second Amended Complaint includes no factual allegations that show Kessler's decisions were based on "nonacademic or constitutionally impermissible reasons." *Yeasin v. Durham*, 719 F. App'x 844, 854 (10th Cir. 2018). Nor has Plaintiff alleged how Kessler's actions constitute a "substantial departure from accepted academic norms." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985).

Therefore, Plaintiff's Second Amended Complaint fails to state a claim against Defendant Kessler individually.

### III. Plaintiff fails to allege sufficient facts showing she was disabled under the Rehabilitation Act.

Plaintiff alleges SWOSU violated § 504 of the Rehabilitation Act by (1) excluding Plaintiff from participation in academic programs; (2) retaliating against Plaintiff for seeking accommodations for her alleged disabilities of ADHD and panic attacks; and, (3) discriminating against Plaintiff on the basis of her purported disabilities. Under the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), the substantive standards for determining whether an individual is disabled are the same. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 & n.5 (10th Cir.1995); *see also Canales v. Nicholson*, 177 Fed.App'x. 834, 838 n.3 (10th Cir.2006) (unpublished); *accord Sanchez v. Vilsack*, 695 F.3d 1174, 1178 (10th Cir. 2012).

Prima facie, a claim under § 504 of the Rehabilitation Act must show that (1) Plaintiff is disabled, as the Rehabilitation Act defines; (2) Plaintiff would be "otherwise qualified" for the benefit sought; (3) the state program receives federal financial assistance; and, (4) Plaintiff was discriminated against solely because of her disability. *See Taylor v.*

9

*Colorado Dep't of Health Care Policy & Fin.*, 811 F.3d 1230, 1233 (10th Cir. 2016); *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007).

Plaintiff's Second Amended Complaint indicates that she was a "solid student before the exacerbation of her disabilities." SAC [Doc. No. 21] at 3 ¶ 11. She claims her grandfather's illness was "obviously the catalyst considering [P]laintiff's solid academic record prior to the Fall 2017 semester." *Id.* at 11 ¶ 39. Plaintiff now alleges that the "duration or expected duration" or the "permanent or long-term impact of the impairment," was significant. *Aldrich v. Boeing Co.,* 146 F.3d 1265, 1270 (10th Cir. 1998). She alleges her "impairment is not transitory," SAC at 8–9 ¶ 30, and that "at this time, Plaintiff's disability is still on-going and existing." *Id*. Plaintiff alleges "she continues to suffer from panic attacks and adverse physical reactions due to her disability." *Id*. The fact that her grandfather was dying was fully disclosed to all her professors at the start of the fall semester. *Id*. at 11 ¶ 39.

To the extent that Plaintiff's Second Amended Complaint establishes this was a permanent impairment, Plaintiff seems to indicate her ADHD and Panic Disorder did not substantially limit her ability to perform as a pharmacy student. *See,e.g.,* SAC [Doc. No. 21] at 2 ¶ 11 ("solid student"). After identifying a covered impairment, the Court must next identify the life activity upon which the plaintiff relies and determine whether it constitutes a major life activity under the ADA. Third, the court asks whether the impairment substantially limited the major life activity. *Doyal v. Oklahoma Heart, Inc.,* 213 F.3d 492, 495 (10th Cir. 2000).

The only activity which was allegedly impaired was Plaintiff's ability to perform as a student. There are no allegations that any of Plaintiff's other major life activities were impacted by her conditions.[2] Plaintiff points to four failed upper-level pharmacy courses, including one resulting from an exam she was unable to complete as a result of a panic attack. *Id*. at 4–5, ¶¶ 19–22. Further, Plaintiff alleges that the obvious catalyst was transient added stress. *See Sanders v. Arneson Prod., Inc.,* 91 F.3d 1351, 1355 (9th Cir. 1996) (holding that an added stressor, namely cancer, which led to psychological impairment with no residual effects was not a disability); *cf. Cunningham v. Univ. of New Mexico Bd. of Regents*, 531 F.App'x 909, 928 (10th Cir. 2013) (unpublished) (noting in dicta that a student who performed satisfactorily in his first two years of medical school while diagnosed with Irlen Syndrome "demonstrated that he did not need an accommodation" to pass his classes).[3] It appears, in this case, Plaintiff was not actually requesting an accommodation for the underlying diagnosed conditions, but rather for a transient stress (her grandfather's illness), as it was this transient stress that caused the disruptions.

Plaintiff fails to state a claim under § 504 of the Rehabilitation Act.

## CONCLUSION

For the foregoing reasons, Defendant State's Motion [Doc. No. 23] and Defendant Kessler's Motion [Doc. No. 22] to dismiss are **GRANTED**. Dismissal with prejudice is

---

[2] In fact, Plaintiff alleges the opposite. SAC at 3 ¶ 15 ("Plaintiff had lived with and was able to reasonably function with her disabilities.").

[3] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1(A).

appropriate where Plaintiff's amendment would be futile. *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997) (A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile). As Plaintiff has been given leave to amend and has subsequently failed to cure the defects in her pleading, the Court finds allowing further amendments would be futile.

**IT IS THEREFORE ORDERED** that Plaintiff's claims against Defendant Kessler in her official capacity are **DISMISSED WIHOUT PREJUDICE** pursuant to FED. R. CIV. P. 12(b)(1). Plaintiff's remaining claims are **DISMISSED WITH PREJUDICE** to refiling pursuant to FED. R. CIV. P. 12(b)(6).

**IT IS SO ORDERED** this 26th day of February, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge